2008-NMCA-150

195 P.3d 879

**Carol WILLIAMS and Marcus Williams, Petitioners–Appellees,**

v.

**RIO RANCHO PUBLIC SCHOOLS, Superintendent Dr. Sue Cleveland, and Rio Rancho High School Principal Richard Vonancken, Respondents–Appellants.**

No. 28,042.

Court of Appeals of New Mexico.

Sept. 11, 2008.

Carter Law Firm, P.C., Donna Trujillo Dodd, Albuquerque, NM, for Appellees.

Scheuer, Yost & Patterson, P.C., Charlotte H. Hetherington, Kristin L. Davidson, Santa Fe, NM, for Appellants.

## OPINION

PICKARD, Judge.

{1} Rio Rancho Public Schools, Rio Rancho Superintendent Dr. Sue Cleveland, and Rio Rancho High School Principal Richard Vonancken (collectively "the School") have petitioned this Court to issue a writ of error directing the district court to (1) dissolve an injunction it orally issued on May 12, 2006, ordering the School to allow Marcus Williams (Williams), a student at Rio Rancho High School, to participate in extracurricular activities and (2) dismiss Williams' complaint

for lack of jurisdiction. In doing so, the School asks us to rule on the question of whether students have a legal right, cognizable in state district court, to participate in extracurricular activities. Because our collateral order doctrine does not contemplate the granting of a writ of error under the circumstances of this case, we deny the writ and decline to rule on the School's question.

## BACKGROUND

{2} During the spring semester of 2006, Williams was a member of the boys' track and field team at Rio Rancho High School (RRHS) in Rio Rancho, New Mexico. On April 16, 2006, the Rio Rancho Department of Public Safety (DPS) filed an incident report against Williams for aggravated assault against his ex-girlfriend. As a result of the incident report, Williams was suspended from participation in school athletics pursuant to the following language of the RRHS Parent/Athlete Manual relating to participation in extracurricular activities: "When an incident occurs that is determined by RRHS Security or DPS to be severe enough to be forwarded to either Juvenile Authorities or DPS for review and/or charges, the student athlete will be suspended immediately."

{3} On May 5, 2006, Williams filed an application for a temporary restraining order and preliminary injunction, alleging violations of school policy and constitutional due process. The same day, the district court entered an ex parte temporary restraining order against the School instructing it to reinstate Williams' eligibility in school athletics immediately and allow Williams to participate in athletics "until adjudication is made on any alleged pending criminal charges."

{4} A hearing on Williams' application for injunction was held on May 12, 2006. The School argued that federal case law holds that students have no federal constitutional right to participate in extracurricular activities, that no state constitutional right exists to support the application, and that participation is subject to the regulations set forth in the New Mexico Athletic Association (NMAA) Handbook. It argued that the school district had the sole authority to suspend a student from participating in athletics based upon allegations contained in the incident report and after having followed the due process procedures outlined in the RRHS Parent/Athlete Manual. Finally, it argued that because no legal right to participate in extracurricular activities exists, there could be no legal harm to Williams if he were suspended from such activities, and thus he could not meet the burden for supporting a preliminary injunction. At the conclusion of the hearing, the district court orally ruled that it was granting the preliminary injunction. For reasons not fully explained in the parties' briefs, no written order was entered, and no direct appeal or other attempt at appellate review was pursued by the School at that time.

{5} Almost a year later, on March 21, 2007, Williams entered into a consent decree in his juvenile case. On March 28, 2007, the School filed a motion with the district court to dissolve the preliminary injunction and dismiss Williams' application on the ground that the condition set forth in the district court's order that he be allowed to participate in extracurricular activities "until adjudication is made on any alleged pending criminal charges" had been met. The School also renewed its argument that the district court lacked jurisdiction to grant an injunction in the first place because Williams had no constitutional right to participate in extracurricular athletics.

{6} A hearing on the motion was held on August 15, 2007. The district court found that the consent decree was not an adjudication as contemplated by the language of the injunction, denied the School's motion, and ruled that the injunction would remain in place until Williams "violate[d] his probation or he fulfill[ed] the duration of the probation and his criminal case [was] dismissed." In an order entered September 26, 2007, the district court also declined to rule on the question of its jurisdiction to impose the injunction or to certify the issue for interlocutory appeal. Rather than appeal the order directly, the School filed a petition for writ of error with this Court on October 26, 2007. Without granting the petition, we assigned the case to the general calendar and directed

the parties to brief the issue of this Court's jurisdiction.

## DISCUSSION

### The Collateral Order Doctrine

{7} A writ of error is "the procedural device for invoking the collateral order doctrine." *Carrillo v. Rostro,* 114 N.M. 607, 617, 845 P.2d 130, 140 (1992). "The collateral order doctrine is a narrow exception [to the final order requirement], whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Id.* at 613, 845 P.2d at 136 (internal quotation marks and citations omitted). It is generally a disfavored doctrine, and "many courts have severely limited application of the doctrine to avert piecemeal appeals becom[ing] the order of the day." *Handmaker v. Henney,* 1999–NMSC–043, ¶ 10, 128 N.M. 328, 992 P.2d 879 (alteration in original) (internal quotation marks and citation omitted).

{8} "In civil cases [in New Mexico], only two types of orders have been held to be collateral orders. First, when an individual sues the state or a state agency, the trial court's order denying the state's motion to dismiss based on the lack of a written contract is a collateral order. Second, in a civil rights action, a defendant's motion for summary judgment based on the defense of qualified immunity is a collateral order and can be reviewed by writ of error." *King v. All-state Ins. Co.,* 2004–NMCA–031, ¶ 16, 135 N.M. 206, 86 P.3d 631 (citations omitted). The instant case does not fit into either category, and the School does not contend otherwise. Instead, it argues that a writ of error is necessary to address the question of whether the district court had jurisdiction to enter the May 12, 2006, injunction against the school district where, according to the School, Williams does not have a protected procedural or substantive due process right to participate in extracurricular activities that is cognizable by state district courts.

{9} An order must meet three criteria to be considered collateral and fall within the finality exception: "[1][i]t must conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Id.* ¶ 13 (internal quotation marks and citation omitted). Our holding today turns on the second criterion. Because the School has failed to demonstrate that the district court's order denying its motion to dissolve the injunction and dismiss Williams' application was "completely separate from the merits of the action," we decline to extend our collateral order doctrine to consider the School's petition.

### The District Court Did Not Lack Jurisdiction to Hear and Decide Williams' Application

{10} The School's contention that the district court lacked "jurisdiction" to enjoin the district on the facts before it is difficult for us to ascertain. Although the School does not specify in its briefing, we assume that where it argues the district court lacked "jurisdiction" to enjoin it, it is referring to the court's subject matter jurisdiction over the matter before it. "Subject matter jurisdiction is the power to adjudicate the general questions involved in the claim and is not dependent upon the state of facts which may appear in a particular case, or the ultimate existence of a valid cause of action." *Gonzales v. Surgidev Corp.,* 120 N.M. 133, 138, 899 P.2d 576, 581 (1995). "A court has subject matter jurisdiction in an action if the case is within the general class of cases that the court has been empowered, by constitution or statute, to hear and determine." *Marchman v. NCNB Texas Nat'l Bank,* 120 N.M. 74, 83, 898 P.2d 709, 718 (1995). Our state district courts are courts of general jurisdiction, N.M. Const. art. VI, § 13, which includes the power to hear and rule on a petition for a preliminary injunction. *See* Rule 1–066 NMRA (governing procedure for issuance by district courts of temporary restraining orders and preliminary injunctions). The School does not argue that the district court exceeded its authority by hearing and ruling on Williams' application for a preliminary injunction, perhaps because no such constitutional or statutory limitation on our district courts exists. Instead, the School seems to be cloaking the question of whether the court erred in granting, extending, or

declining to dissolve the injunction in the mantle of a jurisdictional challenge in order to distinguish the issue raised in its petition for writ of error from the merits of the action below and avoid the result we reach today. As discussed below, this attempt fails.

{11} The School also seems to be arguing that the district court lacked jurisdiction because Williams has no substantive right to participate in school activities, and the School is therefore effectively immune from such challenges. However, the School does not frame its immunity argument as a cognizable immunity defense, and it does not analogize this case to the qualified immunity context in which our courts have previously deemed an order to be collateral. *See Carrillo*, 114 N.M. at 614–16, 845 P.2d at 137–39; *Chavez v. Bd. of County Comm'rs*, 2001–NMCA–065, ¶ 10, 130 N.M. 753, 31 P.3d 1027; *Sugg v. Albuquerque Pub. Sch. Dist.*, 1999–NMCA–111, ¶ 8, 128 N.M. 1, 988 P.2d 311. The School's quasi-immunity argument, like its quasi-jurisdictional argument, fails to draw a viable distinction between the substance of the court's order and the merits of the case. As we discuss below, because none of the court's determinations resolved an issue that was truly separate from the merits of the case, there is no collateral order issued in this case that we may appropriately address by writ of error.

**The District Court's Order Was Not Collateral**

{12} As previously noted, the order from which the School is petitioning for writ of error must "resolve an important issue completely separate from the merits of the action." *King*, 2004–NMCA–031, ¶ 13, 135 N.M. 206, 86 P.3d 631 (internal quotation marks and citation omitted). However, we fail to see how the court's rulings granting, extending, and declining to dissolve the injunction against the School was based on anything but a consideration of the merits. The merits of an action are defined as "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, [especially] of procedure." *Black's Law Dictionary* 1010

(8th ed.2004). At each stage of the proceedings in the district court, the School submitted its argument that Williams had no legally cognizable right to participate in extracurricular activities as a defense to the claim that the School should be enjoined from excluding him from such activities. The court's order of September 26, 2007, reflects its consideration of the parties' arguments as to the issue before it and announces a ruling on the merits of the School's motion. The court expressly declined to rule on the School's jurisdictional challenge or certify it for interlocutory appeal, but this does not render the order collateral as contemplated by our doctrine, which requires that "the impugned order conclusively determine[ ] a disputed issue that is entirely separate from the merits of the action." *Handmaker*, 1999–NMSC–043, ¶ 10, 128 N.M. 328, 992 P.2d 879. As discussed above, the School cannot disguise as a jurisdictional challenge an argument that failed to sway the district court on the merits, where the ultimate question is not truly one of jurisdiction, but is rather one of whether the district court erred in its decision to enjoin the School.

{13} The School contends that Williams' arguments below, which focused on his reading of the RRHS Parent/Athlete Manual, were "separate and distinct" from the School's argument that Williams had no protected interest. This may well be, but the relationship between the arguments of the parties has no place in our collateral order analysis. Instead, we are concerned with whether the order from which the School is petitioning for writ of error resolved an issue completely separate from the merits of the action before the district court. *See King*, 2004–NMCA–031, ¶ 13, 135 N.M. 206, 86 P.3d 631. Because we answer this question in the negative, the second prong of our collateral order doctrine has not been satisfied, and we deny the School's petition for writ of error.

**Other Avenues of Review**

{14} The School appears concerned that it cannot obtain review in this case of its contention that district courts ought not be interfering with school decisions on matters of student athletic activity. We note that the School could have obtained a final written

order following the May 12, 2006, hearing, and may have, on direct appeal from that order, raised the issue of whether Williams had a protected right to participate in extra-curricular activities. The record reveals that the School did not avail itself of the appellate process at that time. No final appealable order from that hearing appears in the record, and at oral argument the School did not explain to our satisfaction why, when Williams' counsel did not present an order, it did not present the order itself or otherwise move the district court to issue a written order. The School appears to bear at least partial responsibility for foreclosing its own avenue to direct appeal back in 2006, and a writ of error is simply not the appropriate procedural vehicle to get this issue before this Court at this late date.

{15} Moreover, even if we construed the 2007 order as a final order, inasmuch as it was the first written order filed in the case confirming that the injunction had been granted, the School did not file its petition for writ of error in the district court within the time allowed by the Rules of Appellate Procedure for filing a notice of appeal. It remains the law that time and place requirements for filing the notice of appeal are mandatory preconditions to the exercise of appellate jurisdiction. *Murken v. Solv–Ex Corp.*, 2006–NMCA–064, ¶ 31, 139 N.M. 625, 136 P.3d 1035.

**Mootness**

{16} The School also appears to be concerned that schools in New Mexico will never be able to obtain an answer to the question of whether students have rights, cognizable in district courts, to participate in school athletics because the season for any particular sport is short enough that the issue will be moot by the time an appellate court can intervene. However, there is an exception to the mootness doctrine that allows courts to "review moot cases that present issues of substantial public interest or which are capable of repetition yet evade review." *Gunaji v. Macias*, 2001–NMSC–028, ¶ 10, 130 N.M. 734, 31 P.3d 1008. Using the writ of error procedure is not necessary to overcome the mootness problem because moot cases may be reviewed on appeal. *See Johnson v. Francke*, 105 N.M. 564, 564 n. 1, 734 P.2d 804, 804 n. 1 (Ct.App.1987).

**CONCLUSION**

{17} We deny the School's petition for writ of error.

{18} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and MICHAEL D. BUSTAMANTE, Judge.